UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

LAVONDA JOHNSON                                                                                    PLAINTIFF

V.                                              No. 4:21-CV-1213-JTR

KILOLO KIJAKAZI, Acting Commissioner
Social Security Administration                                                                    DEFENDANT

## ORDER

### I. Introduction

Plaintiff, Lavonda Johnson ("Johnson"), applied for disability benefits on September 11, 2019, alleging disability beginning on June 13, 2019. (Tr. at 13). After conducting a hearing, the Administrative Law Judge ("ALJ") denied her application on May 8, 2021. (Tr. at 13–24). The Appeals Council denied her request for review on November 18, 2021, making the ALJ's denial of Johnson's application for benefits the final decision of the Commissioner. (Tr. at 1–4).

For the reasons stated below, the Court[1] reverses the ALJ's decision and remands for further review.

---

[1] The parties have consented in writing to the jurisdiction of a United States Magistrate Judge. Doc. 4

## II. The Commissioner's Decision

The ALJ found that Johnson had not engaged in substantial gainful activity since the alleged onset date of June 13, 2019.[2] (Tr. at 15). The ALJ found, at Step Two, that Johnson had the following severe impairments: neuromuscular disorder, osteoarthritis, peripheral and idiopathic peripheral autonomic neuropathy, arthralgias, lumbar facet syndrome, lumbar spondylosis, chronic pain syndrome, anxiety, depression, posttraumatic stress disorder and panic disorder with agoraphobia. *Id*.

After finding that Johnson's impairments did not meet or equal a listed impairment (Tr. at 16–17), the ALJ determined that Johnson had the residual functional capacity ("RFC") to perform work at the light exertional level, with additional limitations: (1) she is able to understand remember, and perform simple, routine, and repetitive tasks; (2) she is able to only occasionally interact with co-workers (providing there are no tandem/coordination work tasks); and (3) she is able to occasionally interact with the general public. (Tr. at 17).

---

[2] The ALJ followed the required five-step sequence to determine: (1) whether the claimant was engaged in substantial gainful activity; (2) if not, whether the claimant had a severe impairment; (3) if so, whether the impairment (or combination of impairments) met or equaled a listed impairment; (4) if not, whether the impairment (or combination of impairments) prevented the claimant from performing past relevant work; and (5) if so, whether the impairment (or combination of impairments) prevented the claimant from performing any other jobs available in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)–(g), 416.920(a)–(g).

The ALJ determined that Johnson was unable to perform any of her past relevant work. (Tr. at 20–23). At Step Five, the ALJ relied upon Vocational Expert ("VE") testimony to find that, based on Johnson's age, education, work experience and RFC, jobs existed in significant numbers in the national economy that she could perform, including positions as marker, shipping and receiving weigher, and routing clerk. *Id.* Thus, the ALJ concluded that Johnson was not disabled. *Id.*

### III.  Discussion

#### A.  Standard of Review

The Court's function on review is to determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole and whether it is based on legal error. *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015); *see also* 42 U.S.C. § 405(g). While "substantial evidence" is that which a reasonable mind might accept as adequate to support a conclusion, "substantial evidence on the record as a whole" requires a court to engage in a more scrutinizing analysis:

> "[O]ur review is more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision; we also take into account whatever in the record fairly detracts from that decision." Reversal is not warranted, however, "merely because substantial evidence would have supported an opposite decision."

*Reed v. Barnhart*, 399 F.3d 917, 920 (8th Cir. 2005) (citations omitted).

In clarifying the "substantial evidence" standard applicable to review of administrative decisions, the Supreme Court has explained: "And whatever the

3

meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence . . . 'is more than a mere scintilla.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 59 S. Ct. 206, 217 (1938)). "It means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id*.

### B. Johnson's Arguments on Appeal

Johnson contends that evidence supporting the ALJ's decision to deny her application for benefits is less than substantial. She argues that: (1) the ALJ did not properly evaluate the medical opinion of Johnson's treating psychiatrist; (2) the RFC did not incorporate all of Johnson's limitations; (3) the ALJ failed to fully develop the record; and (4) the ALJ erred at Step Five. The Court finds support for Johnson's first argument.

Johnson was diagnosed with unspecified depressive disorder with dysthymic, physiological, and reactive features, unspecified anxiety disorder with PTSD, panic, and social anxiety, and borderline personality traits. (Tr. at 489). She attempted suicide twice, once by jumping off a bridge. (Tr. at 486–489). She agreed to have her husband lock away all of his guns in February 2020, due to her suicidal ideations. (Tr. at 506–513). Johnson endured significant past abuse, and had nightmares and flashbacks almost nightly. (Tr. at 388–390, 506–508). She suffered panic attacks in

Walmart and said she had difficulty keeping jobs due to these attacks. (Tr. at 388–390, 508). Johnson tried multiple psychiatric medications, which had significant side effects. (Tr. at 392–397).

On January 9, 2020, Johnson underwent a psychiatric consultative examination. (Tr. at 20). The examiner opined that Johnson would have very few limitations on her mental function in a workplace. (Tr. at 481–489). For example, he said she would not have difficulty understanding instructions and would respond adequately to work pressures. *Id*. Conversely, Johnson's treating psychiatrist, Tracy Epperson, M.D., filled out a medical source statement on February 4, 2021, stating that Johnson would have marked or extreme limitations in a wide variety of mental work functions, and that Jonson would likely miss three days of work per month.[3] (Tr. at 673–675). The ALJ failed to properly analyze or discuss these two opinions, which matters here because the opinions were so contradictory.[4]

---

[3] Dr. Epperson began treating Johnson in July 2020. (Tr. at 609–611).

[4] On January 28, 2017, the Administration promulgated new regulations governing how ALJs assess medical opinion evidence. The new rules, with an effective date of March 27, 2017, focus on whether an opinion is persuasive, based on: (1) supportability; (2) consistency with the evidence; (3) relationship with the claimant [which includes: (i) length of treatment relationship; (ii) frequency of examinations; (iii) purpose of the treatment relationship; (iv) extent of the treatment relationship; and (v) examining relationship]; (4) provider specialization; and (5) any other important factors. See 20 C.F.R. § 404, 1520c(a)–(c) (2017). An opinion is more persuasive if it is consistent with and supported by the medical evidence as a whole. 20 C.F.R. § 416.920c(c)(1)–(2) (2017); *Bonnett v Kijakazi*, 859 Fed. Appx. 19 (8th Cir. 2021); *Phillips v. Saul*, No 1:19-CV-34-BD, 2020 WL 3451519, at *2 (E.D. Ark. June 24, 2020). An ALJ must give good reasons for his findings about an opinion's persuasiveness. *Id.*

ALJs are required to explain their decisions as to the two most important factors: supportability and consistency. 20 C.F.R. 404.1520c(b)(2). These requirements are meant to

As for Dr. Epperson's opinion, the ALJ wrote that it was "not persuasive." (Tr. at 22). He said that "this opinion is a disabling mental residual functional capacity, but it is from just a few days prior to the hearing and not consistent with the evidence for the whole period." *Id*. He did not elaborate at all to explain his conclusion.

With respect to the psychiatric consultative examiner's opinion, the ALJ wrote that it was not persuasive because it was "wordy and somewhat vague, with mostly general statements regarding mental capabilities but ii does say the claimant could do basic work-like tasks, which is presumably consistent with simple work tasks." (Tr. at 21–22). The ALJ added that the consultative examiner "also gave a closing statement questioning the validity of the examination." *Id*.

The ALJ in this case did not address both supportability and consistency in his discussion of the medical opinions. Also, his reasons for his findings were cursory, with no record citation. This alone runs afoul of the Regulations. See 20 C.F.R. §§ 404.1520c(b), 416.920c(b). The ALJ's "sprinkling of the words 'supports' and 'consistent' in his discussion of the opinion is insufficient to satisfy the Regulations' requirement that the ALJ 'explain' how he considered these factors in determining the persuasiveness of a medical opinion." *See Guess v. Kijakazi*, No.

---

provide individuals with a better understanding of the Commissioner's decision and provide sufficient rationale for a reviewing adjudicator or court. *Phillips*, supra; Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 FR 5844-01 at 5854, 5858 (January 18, 2017).

4:20-CV-887-JTR, 2021 WL 5983193, at *3–4 (E.D. Ark. Dec. 17, 2021); see *Bonnett*, supra (the ALJ errs when he does not discuss both prongs). Johnson was prejudiced by the ALJ's insufficient analysis of the medical opinions.

## IV. Conclusion

It is not the task of this Court to review the evidence and make an independent decision. Neither is it to reverse the decision of the ALJ because there is evidence in the record which contradicts his findings. The test is whether there is substantial evidence in the record as a whole which supports the decision of the ALJ. *Miller*, 784 F.3d at 477). The Court has reviewed the entire record, including the briefs, the ALJ's decision, and the transcript of the hearing. The Court finds that the ALJ's decision is not supported by substantial evidence, because the ALJ did not properly evaluate the opinions of the medical experts.

IT IS THEREFORE ORDERED that the final decision of the Commissioner is REVERSED and the case is REMANDED for further review.

DATED this 14th day of November, 2022.

_____
UNITED STATES MAGISTRATE JUDGE